UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
CATHERINE WILLIAMS,

      Plaintiff,

 -against-

COMPREHENSIVE CONSULTING GROUP LLC, LOUIS
RUSSO, individually, and MICHAEL RUSSO, individually,

      Defendants.
-------------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
11-CV-100 (ERK) (JMA)

A P P E A R A N C E S

Derek T. Smith
Akin & Smith
305 Broadway, Suite 1101
New York, NY 10007
 *Attorney for Plaintiff*

Joseph John Ortego
Thomas M. Mealiffe
Nixon Peabody
50 Jericho Quadrangle
Suite 300
Jericho, NY 11753
 *Attorneys for Defendant*

**AZRACK**, **United States Magistrate Judge:**

  On December 7, 2010, plaintiff Catherine Williams ("plaintiff" or "Williams") commenced this action in New York State Court against defendant Comprehensive Consulting Group, LLC, ("CCG"), Louis Russo, and Michael Russo (collectively, "defendants"), alleging, inter alia, racial discrimination in violation of 42 U.S.C. §1981. See generally Compl. 1, ECF No. 1. On January 6, 2011, defendants removed the case to federal court. ECF No. 1. On January 13, 2011, defendants moved to compel arbitration of all claims pursuant to the parties' signed arbitration agreement. ECF No. 4. By Order dated February 16, 2011, the Honorable

1

Edward R. Korman referred the motion to me for a Report and Recommendation. For the reasons discussed below, I recommend granting defendants' motion to compel arbitration and to stay all relevant proceedings until the resolution of arbitration.

## I. BACKGROUND

CCG is a corporation that offers business consulting services. Aff. of Nicholas Giarrusso in Supp. of Defs.' Mot. to Compel Arbitration ("Giarrusso Aff.") ¶ 5, ECF No. 4-1. On March 15, 2010, CCG hired plaintiff, an African-American woman, as Vice President of the company. Compl. ¶¶ 3,15. Pursuant to her employment, plaintiff signed an arbitration agreement ("Agreement") with CCG, which Nick Giarrusso, Vice President of CCG's Operations, signed that same day. Giarrusso Aff. ¶¶ 7–8. The Agreement requires that:

> [A]ny and all past, current, and future controversies or claims arising out of or relating to Employee's employment by or association with [CCG], shall be settled exclusively by final and binding arbitration administered by the American Arbitration Association.

Mot. to Compel, Ex. A ("Agreement") 1. The Agreement also states, in pertinent part, that: (1) "all disputes must be submitted within one year of the event that gave rise thereto, whether or not either party knew of such event;" (2) "the arbitrators will have no authority to award punitive or other damages not measured by the prevailing party's actual damages;" (3) "[e]ach party will bear its own costs and expenses and an equal share of the arbitrators' administrative fees of arbitration;" and (4) "[t]he arbitrators shall not award attorneys' fees." Id. 1–2.

During the five-month course of her employment, plaintiff alleges that Michael and Louis Russo made discriminatory comments to her on several occasions that pertained to her sex, sexual orientation, and race. See Compl. ¶¶ 16–26. Plaintiff contends that after she complained about such remarks and informed defendants of her need to visit a psychotherapist due to these

2

comments, defendants terminated her. Id. ¶¶ 27–31. Approximately six months after her termination, plaintiff filed this action.

## II. DISCUSSION

The Federal Arbitration Act ("FAA") creates a "strong federal policy favoring arbitration and, in light of this policy, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Arakawa v. Japan Network Group, 56 F. Supp. 349, 352 (S.D.N.Y. 1999) (quoting Oldroyd v. Elmira Savings Bank, FSB, 134 F.3d 72, 76 (2d Cir. 1998) (internal quotation marks omitted)). The FAA further provides that "an agreement in writing to submit to arbitration an existing controversy . . . shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2006); Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996). Therefore, only contract defenses, such as unconscionability, may be applied to invalidate an arbitration agreement. Cararotto, 517 U.S. at 687.

Courts in the Second Circuit generally consider four issues when determining whether to compel arbitration: (1) whether the parties agreed to arbitrate; (2) the scope of the agreement; (3) whether Congress intended the federal claim to be non-arbitrable; and (4) whether to stay the nonarbitrable claims. See Hamerslough v. Hipple, No. 10-CV-3056, 2010 WL 4537020, at *2 (S.D.N.Y. Nov. 4, 2010) (citing Genesco, Inc. v. T, Kakiuchi & Co., 815 F.2d 840, 845 (2d Cir. 1987). In sum, a court must first determine whether the parties are bound by a particular arbitration clause, and then determine whether that arbitration agreement applies to the controversy at issue.

Courts apply generally accepted principles of contract law when determining whether the parties are bound to arbitration. Arakawa, 56 F. Supp. 2d at 352 (citing Genesco, 815 F.2d at

3

845). In order to uphold the arbitration agreement, it must be valid and conscionable under relevant state law. See Cap Gemini Ernst & Young, U.S., LLC v. Nackel, 346 F.3d 360, 365 (2d Cir. 2003). As agreed by both parties, New York law governs the agreement's construction and enforcement. See Agreement 1.

The second consideration—that is, whether the arbitration agreement covers a Title VII claim—is not at issue, per se. Neither party disputes that Title VII claims are generally arbitrable.[1] See Raiola v. Union Bank of Switzerland, LLC, 47 F. Supp. 2d 499, 504 (S.D.N.Y. 1999) (citing cases that allow parties to arbitrate a Title VII claim); Hart v. Canadian Imperial Bank of Commerce, 43 F. Supp. 2d 395, 404 (S.D.N.Y. 1999) (same); Desiderio v. National Ass's of Secs. Dealers, Inc., 2 F. Supp. 2d 516, 520 (S.D.N.Y. 1998) (same). What is in dispute, however, is whether the contracted arbitration forum requires plaintiff to "forgo the substantive rights afforded by the statute." See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 28 (1991). Plaintiff specifically argues as such, contending that the Agreement is unconscionable because it "forgo[es] the substantive rights afforded by Title VII, the NYHRL, and the NYCHRL." Pl.'s Opp. to Defs.' Mot. to Compel Arbitration ("Pl.'s Opp.") 4, ECF No. 5.

Plaintiff makes four arguments as to the Agreement's unconscionability: (1) the Agreement reduces the statute of limitations from three years to one year and only limits the employees' rights; (2) it requires plaintiff to pay an equal share of the arbitrator and administrative fees for arbitration; (3) it excludes the right to attorney's fees; and (4) it eliminates

---

[1] Plaintiff's related New York State Human Rights Law ("NYHRL") and the New York City Human Rights Law ("NYCHRL") claims are also subject to arbitration. See generally Agreement; see also Metzler v. Harris Corp., No. 00-CV-5847, 2001 WL 194911, at *3–5 (S.D.N.Y. Feb. 26, 2001) (finding that NYHRL claims were subject to arbitration).

the possibility of punitive damages and injunctive relief.² Id. 12. I will discuss each of plaintiff's arguments below.

### A. Unconscionability

Under New York law, a "determination of unconscionability requires a showing that the contract was both procedurally and substantively unconscionable . . . ." Gillman v. Chase Manhattan Bank, 537 N.Y.S.2d 787, 791 (1988). The procedural element of unconscionability concerns contract formation, whereas substantive unconscionability focuses on the general content of the contract. See Desiderio, 191 F.3d at 207; see also State v. Wolowitz, 468 N.Y.S.2d 131, 145 (1983).

#### 1. Procedural Unconscionability

New York courts find a contract procedurally unconscionable when one party lacked a meaningful choice upon entering the contract. Desiderio, 191 F.3d at 207. The purpose of the unconscionability doctrine "is not to redress the inequality between the parties, but simply to ensure that the more powerful party cannot surprise the other party with some overly oppressive term." Brower v. Gateway 2000 Inc., 246 N.Y.S.2d 246, 253 (1998) (internal quotation marks omitted); see also Bar-Ayal v. Time Warner Cable Inc., No. 03-CV-9945, 2006 WL 2990032, at *16 (S.D.N.Y. Oct. 16, 2006). In determining whether a party lacked a meaningful choice, courts focus on factors such as "the size and commercial setting of the transaction, whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the

---

² Plaintiff specifically alleges that the Arbitration Agreement contains six unconscionable provisions, outlining them as follows: (1) the prohibition of statutory attorney's fees; (2) the fee-splitting provision of arbitration costs; (3) the elimination of punitive damages; (4) the reduced statute of limitations; (5) the elimination of injunctive relief; and (6) a bias towards the employers' rights. Pl.'s Opp. 12. For purposes of clarity, and in light of how plaintiff structures her opposition, I have condensed the reduced statute of limitations and limits on the employees' rights into one analysis, see infra II.A.2.a, and condensed the elimination of punitive and injunctive relief argument into one analysis, see infra II.A.2.c.

experience and education of the party claiming unconscionability, and whether there was disparity in bargaining power." Gillman, 73 N.Y.2d at 10–11.

Although plaintiff does not explicitly argue that the Agreement is procedurally unconscionable, she states that the defendants' imposition of "a take it or leave it arbitration agreement" should "not be allowed." Pl.'s Opp. 12. In essence, plaintiff argues that the Agreement is unconscionable due to inequities in bargaining power and the conditioning of plaintiff's employment on an agreement to arbitrate.

New York courts, however, routinely reject this argument unless accompanied by other allegations of duress. Disparity in bargaining power between two parties alone is not sufficient to vitiate an arbitration agreement absent other circumstances. See Gilmer, 500 U.S. at 32–33 (rejecting that an inherent inequity in bargaining powers between employers and employees renders an arbitration agreement unenforceable); see also Gruber v. Louis Hornick & Co., No. 02-CV-5093, 2003 WL 21222541, at *2 (S.D.N.Y. May 23, 2003); Hart, 43 F. Supp. 2d at 400–01 (S.D.N.Y. 1999); Desiderio, 2 F. Supp. 2d at 520.

Besides CCG's "take it or leave it" proposition, plaintiff does not point to any other circumstances that would indicate she was under duress when she signed the agreement. Nor is there evidence that plaintiff lacked meaningful choice or was otherwise pressured into signing the agreement. As defendants note, plaintiff is a sophisticated woman capable of managing her relationship with the employer. See Reply Mem. in Supp. of Defs.' Mot. to Compel Arbitration ("Defs.' Reply") 5. Plaintiff attested to "carefully reading and fully understanding the document." Id.; Agreement 2. The Agreement was a separate document labeled clearly in bold caps, "Arbitration Agreement" and explicitly spelled out the terms of the agreement in plain language. Defs.' Reply 5; Agreement 1. Further, plaintiff had time to study the agreement and

read identifiable language that allows for the "employee . . . to discuss all aspects of the Agreement with [her] own outside attorney." Agreement 2; see also Gruber, 2003 WL 21222541, at *3 (rejecting claim of duress where "there were no allegations that plaintiff had insufficient time to read the agreement or that defendants misled plaintiff about its contents"); Gillman, 73 N.Y.2d at 11 (rejecting claim of duress where plaintiff did not allege that the arbitration agreement was signed as a result of high-pressured tactics); c.f. Brennan v. Bally Total Fitness, 198 F. Supp. 2d 377, 383 (S.D.N.Y. 2002) (finding an arbitration agreement invalid due to duress where defendant pressured plaintiff to sign the agreement and gave plaintiff insufficient time to review the agreement). Accordingly, the Agreement is not procedurally unconscionable.

    **2. Substantive Unconscionability**

        **a. Statute of Limitations**

Plaintiff argues that the provision in the Agreement which reduces the statute of limitations is unconscionable. An arbitration agreement, however, is not vitiated merely because the statute of limitations is shortened. Indeed, as long as the reduced statute of limitations period applies to both parties equally, and the period is not reduced to less than one year, the arbitration agreement is enforceable. See Blends, Inc. v. Schottland Mills, Inc., 35 A.D.2d 377, 379 (N.Y. App. Div. 1970) (finding that a reduction of the statute of limitations to not less than one year is legitimate); see also Bar-Ayal, 2006 WL 2990032, at *16 (upholding an arbitration agreement that shortened the statute of limitations from six years to one year).

Plaintiff also argues that a shortened statute of limitations is unconscionable because it only applies to defendant. See Pl.'s Opp. 6. Plaintiff's belief, however, is misguided. Defendants admit that the reduced statute of limitations applies to them as well, noting that "the

7

agreement impacts both parties equally." Defs.' Reply 8. Although the arbitration agreement specifically refers to the "Employee" at its onset, the agreement itself applies to both defendants and plaintiff equally. The plain language of the agreement reflects accordingly: "All disputes must be submitted within one (1) year of the event that gave rise thereto, whether or not either party knew of the event." Agreement 1. Nowhere in the agreement does the arbitration language exclusively limit plaintiff's statute of limitations and not the employers'. Further, as defendants point out, the reduced statute of limitations has not prejudiced plaintiff, considering that plaintiff timely brought her claim within the agreed to one-year statute of limitations period. Defs.' Reply 8; see Stewart v. Paul, Hastings, Janofsky, & Walker, LLP, 201 F. Supp. 2d 291, 292 n.4 (S.D.N.Y. 2002) (finding that a one year statute of limitations clause was not an issue where plaintiff raised her claim in a timely matter). Accordingly, the reduced statute of limitations provision is neither unconscionable, nor one-sided.

### b. Arbitration Fees

Plaintiff contends that the Agreement is also unenforceable because its fee-shifting provision makes the costs of arbitration prohibitively expensive, thus denying her the right to proceed on her claim. Agreement 2 ("Each party shall bear its own costs and expenses and an equal share of the arbitrators' and administrative fees of arbitration.") This argument also proves unavailing.

While it is true that significant arbitration costs may preclude a litigant from effectively vindicating her statutory rights in an arbitral forum, plaintiff "bears the burden of showing the likelihood of incurring such costs." Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 92 (2000). Although courts have yet to explicitly detail what a plaintiff must prove to establish this burden, it is well-established that the mere risk of prohibitive costs is "too speculative to

justify invalidating the arbitration agreement and would undermine federal policy favoring arbitration agreements." Brady v. The Williams Group, 878 N.Y.S.2d 693, 698 (2009) (citing Green Tree, 531 U.S at 90); see also Barbieri v. K-Sea Transp. Corp., 566 F. Supp. 2d 187, 194–95 (E.D.N.Y. 2008); In re Currency Conversion Fee Antitrust Litig., 265 F. Supp. 2d 38, 411 (S.D.N.Y. 2003). Courts generally find that fee-splitting provisions do not automatically invalidate an arbitration agreement in lieu of potentially high costs. See Sewart, 201 F. Supp. 2d at 293 ("The assertion that the cost sharing provision per se invalidates the entire agreement is not supported either by the law of this Circuit or by the better considered authorities elsewhere.") (citations omitted). Rather, courts in the Second Circuit undertake a "case-by-case analysis, that focuses, among other things, upon the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether the cost differential is so substantial as to deter the bringing of claims." E.E.O.C. v. Rappaport, Hertz, Cherson, Rosenthal, P.C., 448 F. Supp. 2d 458, 463 (E.D.N.Y. 2006); see also Stewart v. Paul, Hastings, Janofsky & Walker, LLP, 201 F. Supp. 2d 291, 293 (S.D.N.Y. 2002) (quoting Bradford v. Rockwell Semiconductor Sys., Inc., 238 F.3d 549, 556 (4th Cir. 2001)).

Here, plaintiff argues that the fee-splitting provision in the Agreement would preclude plaintiff from effectively vindicating her rights considering the arbitration's high cost. Plaintiff estimates, upon researching the American Arbitration Association's ("AAA") relevant fee schedule, and approximating, based on personal experience, the number of days and hours of arbitration needed to resolve the case, that the costs of arbitration could amount to $70,0000.[3] Pl.'s Opp. 7–8.

---

[3] Plaintiff's counsel estimates that the costs of an $8,250 filing fee and three arbitrators, who charge $325 per hour for five days of arbitration, deliberation, and document review, will total $70,000. Pl.'s Opp. 8.

In support of her argument that the costs of arbitration are prohibitively expensive, plaintiff cites to E.E.O.C v. Rappaport, Hertz, Cherson & Rosenthal, P.C., 448 F. Supp. 2d 458. Pl.'s Opp. 7. There, the district court noted that "[r]egardless of whether the Court considers [plaintiff's] financial situation, it is clear that if the arbitration costs are in the range of $6,000 to $11,250, as she alleges, these costs would be prohibitively expensive in comparison to the filing fee she is required to pay to commence a proceeding in federal court." Id. at 464. While, at first glance, this would appear to support plaintiff's assertion, the court ultimately compelled arbitration on the ground that it was "unclear whether [plaintiff] would be required to pay these substantial fees to commence an arbitration." Id.

Similarly, the costs of arbitration here remain speculative. The Court does not know how the AAA will categorize the dispute. The AAA categorizes disputes as "Employer-Promulgated Plans" and "Individually-Negotiated Employment Agreements and Contracts." Pl.'s Opp. Ex. 1, AAA's Employment Arbitration Rules ("Arbitration Rules") 1–2, ECF No. 5-1. Depending on the AAA's own administrative determination as to which category the employment contract pertains, the costs of arbitration may differ. For example, if the dispute arises from an Employer-Promulgated plan, and the case is heard before three or more arbitrators, the initial filing fee is capped at $175. Arbitration Rules 1. Conversely, for disputes arising from an Individually-Negotiated Agreement, depending on which fee schedule applies, the initial filing fee may be $2,500 or $8,200.[4] Id. 4, 6.

Without actual costs, the Court cannot assess the cost differential between arbitration and litigation. Besides reference to general arbitration costs based on figures in entirely different cases, plaintiff has not established that arbitration fees would deny her or preclude her from

---

[4] A "Standard Fee Schedule" would require an $8,200 initial fee for a claim ranging from one million to five million dollars, whereas a "Flexible Fee Schedule" would require a $2,500 initial fee. Arbitration Rules 4, 6.

vindicating her statutory rights. Arakawa, 56 F. Supp. 2d at 355 (rejecting plaintiff's argument that fee-splitting rendered arbitration agreement void when, at the relevant point in the litigation, it was not clear how large fees would be and therefore finding that it was impossible to determine whether payment of fees would constitute a barrier to vindication of plaintiff's statutory rights); Mildworm v. Ashcroft, 200 F. Supp. 2d 171, 180 (E.D.N.Y. 2002) (declining to invalidate an arbitration agreement where the record does not adequately show how "large the costs of arbitration will be, how much of the costs plaintiff will be required to pay, and whether plaintiff can effectively vindicate his statutory rights"); also Gruber, 2003 WL 21222541, at *3–4 (finding that plaintiff's proposed fee schedule was too unclear and inadequate to conclude that the arbitration costs were "prohibitively expensive").

Although the AAA's rules include provisions as to payment plans, the Court is cognizant that the parties' fee-splitting clause in the Agreement will supersede any AAA authority to distribute costs as it sees fit. See Brady, 878 N.Y.S.2d at 697–98 (holding that where the parties' arbitration agreement has a clear and unambiguous intent to share the costs of the arbitrator's compensation, a conflicting AAA fee rule will not supersede the parties' agreement.) Therefore, if, during arbitration, the fees become so prohibitively expensive that plaintiff is unable to vindicate her rights in the arbitral forum, she may have recourse in court. See Shearson/American Express Inc. v. McMahon, 482 U.S. 220, 232 (1987) (finding that judicial review of arbitral award is sufficient to ensure that arbitrators comply with requirements of statute); Mildworm, 200 F. Supp. 2d at 180 (maintaining jurisdiction on the cost-sharing provision of the arbitration award). Accordingly, I will maintain jurisdiction over any subsequent petition with respect to the Agreement's fee-splitting cost provision.

### c. Limits on Punitive Damages and Injunctive Relief

While arbitration does not need to provide identical remedies as adjudication, it must provide remedies sufficient to satisfy statutory purposes. See Martens v. Smith Barney, Inc., 181 F.R.D. 243, 256 (S.D.N.Y. 1998). Plaintiff argues that the arbitration agreement is unconscionable because it forecloses the statutory right to seek punitive or injunctive relief. Pl.'s Opp. 11. Plaintiff justifies her argument by pointing to the Agreement's clause that notes: "the arbitrators will have no authority to award punitive or other damages not measured by the prevailing party's actual damages." Agreement 1. As defendants note, however, the arbitration agreement does not preclude punitive or injunctive relief, but rather limits the relief awarded. Defs.' Reply at 10. Further, the Agreement explicitly provides that the arbitrators must comply with the statute's requirements. The applicable language of the damages clause reads as follows: "<u>Except as may be required by statute</u>, (1) the arbitrators will have no authority to award punitive or other damages . . . ." Agreement 1 (emphasis added). Thus, the Agreement allows punitive damages and injunctive relief as required by statute. Indeed, the AAA allows an arbitrator to grant any typef of relief that "would be available at a court of law." Arbitration Rules 3.

As long as arbitration provides sufficient remedies to satisfy statutory purposes, the arbitrator need not provide exactly the same remedies as adjudication. Martens, 181 F.R.D. at 256 ("No statutes require arbitrations to mimic all the procedural formalities of federal courts, but under Title VII, arbitrations cannot disallow remedies central to the Title VII scheme."). Where, as here, the Agreement allows the relief required by statute, the Agreement is enforceable.

### d. Attorney's Fees

Title VII provides for the discretionary award of attorney's fees to a prevailing party. 42 U.S.C. § 2000e-5(k); see Gruber, 2003 WL 21222541, at *4. "While the language of the Title VII fee provision refers to the award as discretionary, a prevailing plaintiff is in fact entitled to fees unless special circumstances would render such an award unjust." Lyte v. Sara Lee Corp., 950 F.2d 101, 103 (2d Cir. 1991) (internal quotation marks omitted). Thus, if an arbitration agreement waives a plaintiff's right to obtain attorney's fees under a Title VII claim, that provision is invalid. Hornick, 2003 WL 21222541, at *4. An invalid provision, however, does not vitiate the entire agreement. "When an arbitration clause impermissibly prohibits attorney's fees where they would otherwise be available to vindicate federal statutory rights, the proper remedy is to sever the offending provision and compel arbitration of the dispute." Hamerslough, 2010 WL 4537020, at *3; see also Herrera v. Katz Commc'ns, Inc., 532 F. Supp. 2d 644, 647 (S.D.N.Y. 2008); Beletsis v. Credit Suisse First Boston Corp., No. 01-CV-6266, 2002 WL 2031610, at *6 (S.D.N.Y. Sept. 4, 2002); DeGaetano v. Smith Party, Inc., 983 F. Supp. 459, 468–69 (S.D.N.Y. 1997) ("Particularly important is that arbitration award attorney fees to prevailing parties; arbitration agreements providing otherwise are unenforceable as against the public policy of Title VII."). The Agreement itself upholds the severability of an invalid provision, noting:

> In the event any provision of this Agreement is held to be invalid, illegal, or unenforceable for any reason or in any respect, such invalidity, illegality, or unenforceability will in no event affect, prejudice, or disturb the validity of the remainder of the Agreement, which will be in full force and effect, enforceable in accordance with its terms.

Agreement 2. Where, as here, the Arbitration Agreement impermissibly prohibits plaintiff's right to attorney fees, the provision must be severed.

Plaintiff argues that any unconscionable provisions "irredeemably taint" the arbitration agreement, and therefore the Court should hold the Agreement unenforceable in its entirety. Pl.'s Opp. at 11. Contrary to plaintiff's assertions, the Court will not proclaim the entire agreement unenforceable; rather, the proper remedy is to sever this provision and to compel arbitration. By nullifying the attorney's fee provision, the Court will avoid overriding parties' intent to arbitrate. See Brady, 878 N.Y.S.2d 693, 701 (2009). As the prohibition of attorney's fees is the only invalid term in the Agreement, I hereby compel arbitration.

### III. CONCLUSION

For the foregoing reasons, I respectfully recommend that defendants' motion to compel be granted, subject to the severance of the prohibition against attorney's fees, and that the Court stay all other proceedings against defendants until arbitration is fully and finally resolved. I also recommend maintaining jurisdiction over the fee-splitting provision. Any objections to this report and recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6.

SO ORDERED.

Dated: May 3, 2011
Brooklyn, New York

_____/s/_____
JOAN M. AZRACK
UNITED STATES MAGISTRATE JUDGE